

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Game, Fish & Oyster Commission
Austin, Texas

Gentlemen:                    Attention: Hon. A. E. Wood
                                          Chairman

                              Opinion No. O-2209
                              Re: Authority of Game, Fish and
                                  Oyster Commission to issue
                                  permit for removal of mud-
                                  shell from Nueces Bay.

        This is in reference to your letter of April 10,
1940, with enclosures, requesting the opinion of this de-
partment as to the authority of the Commission to issue a
permit to an individual for the removal of mudshell in
Nueces Bay.

        The request is occasioned in view of an outstand-
ing contract between the Game, Fish and Oyster Commission
and the Southern Mineral Corporation, dated January 9, 1934,
subsequently assigned to the Southern Alkali Corporation;
providing for the sale of two million tons of mudshell, said
amount being an estimate as of 1934 of the total amount of
mudshell in Nueces Bay. It is apparent from your correspond-
ence, the contract and discussions with you that it was the
undoubted intention of the parties to contract for the sale
of the entire amount of mudshell in Nueces Bay (estimated
at 2,000,000 tons) whatever the true total amount might be.
In view of the original contract and existing relations be-
tween the Commission and assignee of the Southern Mineral
Corporation (which parties are carrying out the terms and
provisions of the contract at the present time), may the
Commission issue a permit to an individual to remove mudshell
from Nueces Bay.

        We set out below the pertinent statutes involved:

        "Article 4053.  Anyone desiring to purchase
    any of the marl and sand of commercial value and
    any of the gravel, shells or mudshell included

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Game, Fish & Oyster Commission, Page 2

within the provisions of this chapter, or otherwise operate in any of the waters or upon any island, reef, bar, lake, bay, river, creek or bayou included in this chapter, shall first make written application therefor to the Commissioner designating the limits of the territory in which such person desires to operate. If the Commissioner is satisfied that the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto and that such operation would not damage or injuriously affect any island, reef, bar, channel, river, creek or bayou used for frequent or occasional navigation, nor change or otherwise injuriously affect any current that would affect navigation, he may issue a permit to such person after such applicant shall have complied with all requirements prescribed by said Commissioner. The permit shall authorize the applicant to take, carry away or otherwise operate within the limits of such territory as may be designated therein, and for such substance or purpose only as may be named in the permit and upon the terms and conditions of the permit. No permit shall be assignable, and a failure or refusal of the holder to comply with the terms and conditions of such permit shall operate as an immediate termination and revocation of all rights conferred therein or claimed thereunder. No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any of such products from any territory or to otherwise operate in or upon any island, reef, bay, lake, river, creek, or bayou included in this chapter."

"Article 4053d. The Game, Fish and Oyster Commissioner by and with the approval of the Governor, may sell the marl, gravel, sand, shell or mudshell included within this Act, upon such terms and conditions as he may deem proper, but for not less than four (4¢) cents per ton, and payment therefor shall be made to said Commissioner. . . ."

Articles 4053 and 4053d deal with the same general subject, the purchase and sale of sand, gravel, shell

and mudshell, and consequently they must be construed in pari materia. 39 Tex. Jur. 253. This conclusion is strengened by looking to the legislative history of these enactments. As originally enacted they were both contained in Chapter 68, Acts 1911, Thirty-second Legislature, page 118. Section 5 of that Act represents the present Article 4053, and Section 6 represents the progenitor of present Article 4053d. At the First Called Session of the Thirty-second Legislature in 1911, Section 6 of the original Act (Chapter 68) was amended to change the sales price of gravel and shells to not less than ten cents per cubic yard to not less than four cents per ton, and other minor changes.

In 1919 the Second Called Session of the Thirty-sixth Legislature enacted Senate Bill 114 which was Chapter 74, Acts 1919, First and Second Called Sessions, page 215, Sections 5 and 6 of which read as follows:

"Sec. 5. Anyone desiring to purchase any of the marl and sand of commercial value and any of the gravel, shells or mudshell included within the provision of this Act, or otherwise operate in any of the waters or upon any island, reef, bar, lake, bay, river, creek or bayou, included in this Act, shall first make written application therefor to the Game, Fish and Oyster Commissioner designating the limits of the territory in which such person desires to operate. If the Game, Fish and Oyster Commissioner is satisfied the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell, in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto and that such operation would not damage or injuriously affect any island, reef, bar, channel, river, creek or bayou used for frequent or occasional navigation nor change or otherwise injuriously affect any current that would affect navigation, he may issue a permit to such person after such applicant shall have complied with all regulations and requirements prescribed by said Commissioner. The permit shall authorize the applicant to take, carry away, or otherwise operate within the limits of such territory as may be designated therein, and for such substance or purpose only as may be named in the permit and upon the terms and conditions therein. No permit shall be assignable, and a failure to, or refusal of the holder to

Game, Fish and Oyster Commission, Page 4

comply with the terms and conditions of the permit shall operate as an immediate termination and revocation of all rights conferred therein or claimed thereunder. No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any marl, gravel, sand, shell or mudshell from any territory or to otherwise operate in or upon any island, reef, bay, lake, river, creek, bayou, or bay included in this Act.

"Sec. 6. The Game, Fish and Oyster Commissioner, by and with the approval of the Governor, may sell the marl, gravel, sand, shells, or mudshell, included within this Act, upon such terms and conditions as he may deem proper, but for not less than four cents per ton, and payment thereof shall be made to said Commissioner. The proceeds arising from such sale shall be transmitted to the State Treasurer and be credited to the general fund of the State and may be expended by the said Commissioner upon itemized accounts sworn to by those performing the service or furnishing the material, and approved by said Commissioner. The said account shall be filed with the Comptroller of Public Accounts, and he shall draw a warrant therefor upon the State Treasurer."

Note that the language is almost identical to that contained in the present Articles 4053 and 4053d except for minor changes that the codifiers of 1925 made, and as amended by Chapter 193, Acts 1925, Thirty-ninth Legislature, page 452, changing the fund into which proceeds arising from the sale of marl, gravel, sand, shell and mudshell should be placed.

Articles 4053 and 4053d must, therefore, be construed together and if possible harmonized as one enactment. This was just as true in 1934 as at the present time and these articles ipso facto became part and parcel of the contract upon its execution. The last sentence of Article 4053 which has added significance because it has been tied together with Article 4053d, originated in 1911, is repeated for emphasis:

". . . No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any of such products from any ter-

ritory or to otherwise operate in or upon any island, reef, bay, lake, river, creek, or bayou included in this chapter."

Article 4053 was a part of the contract as executed in 1934. Regardless of the amount of mudshell then thought to exist or now found to be existing in Nueces Bay, the Commission could not by contract, permit or otherwise grant an "exclusive right" to such mudshell.

Consequently, it is the opinion of this department and you are respectfully advised that the Game, Fish and Oyster Commission is not prohibited by virtue of a previous contract it entered into in 1934 for the sale of mudshell in Nueces Bay, from now granting the right to another company or individual to take mudshell from a portion of the same bay. The Commission may in its administrative discretion grant such permit upon proper application being made in accordance with Article 4053, Revised Civil Statutes of 1925.

Inasmuch as your inquiry has already been answered we find it unnecessary to pass upon the present status of the contract executed in 1934. However, in passing we call your attention to that portion of Article 4053 which provides that "no permit shall be assignable" in view of the attempted assignment of the contract to the Southern Alkali Corporation.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED APR 25, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

JDS:LM

BY *Walter R. Koch*
Walter R. Koch
Assistant

BY *James D. Smullen*
James D. Smullen


APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN